UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JACLYN K.,[1] | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:24-cv-00023-TWP-KMB ) |
| CAROLYN W. COLVIN,[2] | ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Jaclyn K. applied for disability benefits from the Social Security Administration ("SSA") on June 1, 2024, alleging an onset date of February 10, 2021. [Dkt. 8-5 at 4-10.] Administrative Law Judge Lloyd Hubler (the "ALJ") issued a decision on July 11, 2023, concluding that Jaclyn was not disabled and therefore not entitled to receive the requested benefits. [*Id.* at 11-23.] The Appeals Council denied her request for review on December 5, 2023. [Dkt. 8-7 at 2.] On February 7, 2024, Jaclyn timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. [Dkt. 1.]

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

[2] Carolyn W. Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn Colvin is substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

motion. For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **REVERSE and REMAND** the Commissioner's decision finding that Jaclyn was not disabled.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled.

*Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND[3]

Jaclyn was 41 years old when she applied for disability benefits. [Dkt. 8-5 at 4.] She previously worked receiving and unloading trailers at a Lowe's warehouse. [Dkt. 8-2 at 44-45.] Before that, she performed similar work at a sporting goods warehouse. [*Id.* at 46.]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Jaclyn was not disabled. Specifically, the ALJ found as follows:

- At Step One, Jaclyn has not engaged in substantial gainful activity since February 10, 2021, the alleged onset date. [*Id.* at 14.]

- At Step Two, Jaclyn has the following severe impairments: cervical degenerative disc disease, lumbar degenerative disc disease, and obesity. [*Id.*]

- At Step Three, Jaclyn does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.* at 15.]

- After Step Three but before Step Four, Jaclyn has the RFC "to perform light work as defined in 20 CFR 404.1567(b) except [she] can occasionally climb ladders, ropes, and scaffolds. She can frequently stoop, kneel, or crouch. She can occasionally crawl. [She] is limited to occasional exposure to hazardous moving machinery or unprotected heights." [*Id.* at 16.]

- At Step Four, Jaclyn is unable to perform any past relevant work. [*Id.* at 21.]

- At Step Five, relying on testimony from the vocational expert ("VE"), and considering Jaclyn's age, education, and RFC, there were jobs that existed in the national economy that she could have performed through the date of the decision, including Price Marker, Cashier, and Routing Clerk. [*Id.* at 22.]

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

4

## III. DISCUSSION

Jaclyn raises three issues for the Court's review: (1) whether the ALJ erred in conducting her subjective symptom analysis; (2) whether the ALJ should have obtained updated expert medical reports in light of new medical evidence, including an MRI and an X-Ray; and (3) whether Jaclyn's RFC is supported by substantial evidence. [Dkt. 11 at 1-2.] The Court begins with Jaclyn's first claim that the ALJ erred in conducting the subjective symptom analysis, which the Court finds dispositive.

Jaclyn argues that the ALJ erred by discrediting her subjective claims about the intensity, persistence, and limiting effects of her spine and nerve pain, which arises from bulging discs and other degenerative issues in her neck and low back. [*Id.* at 29-35.] She argues that the objective medical evidence shows that she underwent years of treatment from multiple physicians and therapists without success, which supports her claim of disability. [*Id.* at 29-30.] She argues that the ALJ improperly characterized her treatment as "conservative" even though she was prescribed strong opioid pain medication and underwent a progressive treatment program that included cervical spine surgery. [*Id.* at 30-32.] She argues that the ALJ relied on the fact that she refused additional rounds of steroid injections without considering the reasons for her refusal. [*Id.* at 33.] She argues that the ALJ ignored evidence in the record about the severity and persistence of her pain. [*Id.* at 33-34.] Finally, she argues that the ALJ failed to meaningfully engage with the objective medical evidence or explain how that evidence was inconsistent with her subjective claims about the intensity, persistence, and limiting effects of her condition. [*Id.* at 34.]

In response, the Commissioner argues that the ALJ based his conclusions about the intensity, persistence, and limiting effects of Jaclyn's condition on the observations of her treating physicians and nurse. [Dkt. 13 at 14-15.] The Commissioner argues that the ALJ appropriately

characterized Jaclyn's treatment as conservative because her surgeon, Dr. MacKinlay, recommended "conservative management" for her lumbar spine and did not recommend additional spine surgery. [*Id.* at 15.] She argues that Jaclyn did not receive "intense medication protocols like opioid pain management." [*Id.*] She argues that steroid injections are a form of conservative treatment. [*Id.*] She acknowledges that the ALJ had to consider Jaclyn's reasons for rejecting additional rounds of steroid injections and argues that "[t]here is no indication that the ALJ here did not consider possible reasons for Plaintiff's failure to pursue" that treatment. [*Id.* at 17.] She argues that the ALJ reasonably discredited Jaclyn's claims about the severity of her pain because Jaclyn did not frequently visit the emergency room. [*Id.* at 16.] Finally, the Commissioner argues that the ALJ did not have to address each and every piece of evidence in the record and disputes that the ALJ cherry-picked pieces of evidence to reach a predetermined outcome. [*Id.* at 18.]

In reply, Jaclyn argues that she only refused additional steroid injections after previous injections failed to provide relief—a fact that the ALJ failed to consider in his written opinion. [Dkt. 14 at 14.] She notes that Dr. MacKinlay only recommended "conservative" treatment after Jaclyn's spine surgery because he had concerns about performing a second spine surgery due to Jaclyn's age and other risk factors, which is another fact that the ALJ failed to consider in his written opinion. [*Id.*] Finally, she argues that the ALJ regurgitated language from her medical records but failed to explain how anything in her medical records contradicted her claims about the intensity, persistence, and limiting effects of her medical conditions. [*Id.* at 15.]

When assessing a claimant's subjective symptoms, an ALJ should complete a two-step process. First, the ALJ will "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3. Second,

6

"once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including but not limited to the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8. The court must afford the ALJ's determination special deference, and it will only reverse if the ALJ's determination is patently wrong. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

Having reviewed the administrative record and the Parties' briefs, the Court finds that the ALJ's subjective symptom analysis was patently wrong and requires reversal. Frankly, the Court is astonished by the ALJ's claim that Jaclyn underwent "rather underwhelming treatment consisting largely of routine primary care . . . ." [Dkt. 8-2 at 16.] Between May 2021 and May 2023, Jaclyn attended thirty-two outpatient medical appointments, including many appointments with a spine surgeon. [*See* generally dkts. 8-7; 8-8.] She underwent neck surgery, [dkt. 8-7 at 239-82], which seems anything but "underwhelming." She received multiple rounds of steroid injections. [*Id.* at 24, 148, 354.] She completed nine physical therapy appointments before her surgery and another physical therapy appointment immediately after her surgery. [*Id.* at 202-38, 255-58.] She received multiple x-rays, multiple MRIs, multiple CT scans, and multiple nerve conduction studies. [*Id.* at 44-52, 92, 139-40, 281, 293-94; dkt. 8-8 at 17.] To be clear, an extensive medical history alone does not entitle a claimant to disability benefits. But what is so troubling in this case is that the ALJ grossly mischaracterized Jaclyn's treatment history to

discredit her claims about the effects that her chronic medical conditions had on her ability to function and maintain employment.  While the ALJ has broad discretion to make credibility determinations, those determinations must be made based on an assessment of the actual record evidence at issue.

Turning to the ALJ's more specific findings about Jaclyn's medical record, the Court finds that the ALJ was patently wrong to characterize her treatment as "conservative."  SSA regulations require the ALJ to "consider the type, dosage, effectiveness, and side effects of any medication" as well as "treatment other than medication" in evaluating a claimant's symptoms.  20 C.F.R. § 404.1529(c)(3)(iv), (v) (cleaned up).  An ALJ may find that a claimant's reports of extreme pain are inconsistent with routine and conservative treatment.  *See*, *e.g. Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005).  But here, Jaclyn's treatment was not conservative.  She was prescribed a strong opioid medication for long-term pain management—a fact that the ALJ completely ignored in his written opinion.  *See Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) (contrasting conservative over-the-counter medications with high-strength opioid medications).  Hydrocodone was first prescribed on May 24, 2021, and remained on Jaclyn's list of medications through May 5, 2023, which is the last medical appointment in the administrative record.[4]  [Dkts. 8-7 at 7; 8-8 at 12.]

---

[4] Curiously, the Commissioner speculates that hydrocodone was an "interim solution" because "none of her doctors discussed it as treatment" after it was initially prescribed on May 24, 2021. [Dkt. 13 at 15-16, n. 9.]  The Commissioner fails to mention that Jaclyn told Dr. John Nieters that she was taking hydrocodone three times a day during her consultative examination in December 2021.  [Dkt. 8-7 at 157.]  She also fails to mention that Jaclyn's medical records show that her prescription for 90 hydrocodone pills was refilled regularly throughout the period of alleged disability.  [*See*, *e.g.*, *id.* at 143 (Aug. 3, 2021); 175 (May 13, 2022); 340 (June 3, 2022); 188 (Aug. 30, 2022); 269 (Sept. 27, 2022); 192 (Oct. 25, 2022); dkt. 8-8 at 7 (April 19, 2023).  The Court reminds the Commissioner that she may not omit material facts when those facts happen to contradict her arguments.

The Commissioner relies on *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2023), for the proposition that physical therapy and steroid injections like the ones Jaclyn received are conservative treatments. [Dkt. 13 at 15.] *Prill* is readily distinguishable because in that case, the Seventh Circuit Court of Appeals reasoned, "*Prill did not undergo major surgery* during the period of time under consideration, and the most aggressive treatment she received consisted of the injections that have been described as conservative treatment." *Prill*, 23 F.4th at 749 (emphasis added). In this case, by contrast, Jaclyn underwent a major spine surgery called a "cervical disc arthroplasty C5-C6" during the period of alleged disability—specifically, after physical therapy, epidural steroid injections, opioid pain medication, and all other treatments failed. [Dkt. 8-7 at 268]. Jaclyn's case is unlike *Prill* more like *Schomas*, where the Seventh Circuit Court of Appeals held that "Schomas indeed began with conservative therapy, such as over-the-counter anti-inflammatories, chiropractic treatment, and physical therapy. But over time his treatment became more aggressive. Schomas was prescribed narcotic pain relievers, submitted to steroid injections, and finally underwent major surgery. Those treatments belie the ALJ's conclusion that Schomas was treated conservatively." 732 F.3d at 709. Thus, the totality of Jaclyn's medical record does not support the ALJ's conclusion that her overall treatment plan was conservative.

The Commissioner also argues that the ALJ reasonably relied on Jaclyn's surgeon's characterization of her treatment as "conservative," but that is a mischaracterization of the record. The ALJ wrote that on May 3, 2023, about ten months after Jaclyn's cervical spine surgery, "Dr. MacKinlay recommended only continued conservative management for her lumbar spine." [Dkt. 8-2 at 19.] There are two issues with this finding. First, Jaclyn had already undergone cervical spine surgery by this point, which is not a conservative treatment. Second, the ALJ took Dr. MacKinlay's comment about Jaclyn's lumbar spine out of context. During the appointment,

9

Dr. MacKinlay noted that Jaclyn had disc protrusion causing spinal stenosis in the lumbar region of her spine, which caused pain that was exacerbated by "standing for long periods of time." [Dkt. 8-8 at 14, 15.] Dr. MacKinlay stated that he and Jaclyn "did discuss possible surgical intervention, but we are going to hold off on anything given her age and risks for adjacent segment degeneration with any kind of fusion surgery. I would strongly recommend continued conservative management for her lumbar spine." [*Id.* at 15.] The ALJ's written opinion implies that surgical intervention was not necessary for Jaclyn's lumbar stenosis, but a closer reading of the medical record shows that Dr. MacKinlay was merely "hold[ing] off" on surgery due to Jaclyn's age and other risk factors. Given this context, the Court finds that the ALJ erred in relying on Dr. MacKinlay's statement to discredit Jaclyn's claims about the intensity, persistence, and limiting effects of her lumbar disc protrusion and stenosis.

The ALJ also erred by discrediting Jaclyn's claims based on her refusal to undergo an additional round of epidural steroid injections in May 2023 without considering her reasons for doing so. SSR 16-3p provides that "if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." However, SSR 16-3p also notes that there are numerous reasons that a patient might not comply with or seek additional treatments, such as side effects, cost, religious beliefs, and other factors. *Id.* For this reason, the ALJ may not discredit a claimant's testimony about her subjective symptoms on the basis of gaps in care "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* Thus, while "a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger*

*v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (remanding where the ALJ failed to question the claimant about gaps in treatment).

In this case, the record does not support an inference that Jaclyn had a sporadic treatment history or generally refused to follow her doctors' advice. In addition to various other treatments, the medical record shows three instances where she underwent steroid injections to treat her persistent nerve pain. [Dkt. 8-7 at 24 (clavicle injection on Jan. 27, 2021); 148 (lumbar injection on Aug. 25, 2021); 354 (wrist injection on Dec. 21, 2022).] During her appointment on May 3, 2023, Dr. MacKinlay wrote, "She has had previous injections which she also states made her left leg pain worse, so she is very hesitant in having any further injections. . . . Patient again is very hesitant on any epidural steroid injections given her experience in the past." [Dkt. 8-8 at 14-15.] The ALJ did not consider Jaclyn's reason for refusing another round of steroid injections, even though her reasons were apparent from the medical record. This amounts to reversible under SSR 16-3p and binding precedent from the Seventh Circuit Court of Appeals.[5] *See Shauger*, 675 F.3d at 696.

The other factors the ALJ relied on to discredit Jaclyn's claims are either irrelevant or unsupported by the evidence. He noted that she "has not required frequent emergency room care." [Dkt. 8-2 at 20.] The ALJ does not explain why Jaclyn would need to frequent the emergency

---

[5] The Commissioner argues that "[t]here is no indication that the ALJ here did not consider possible reasons for Plaintiff's failure to pursue" additional steroid injections. [*Id.* at 17.] The Court declines the Commissioner's invitation to speculate about things the ALJ may have considered in deciding this case that he did not reduce to writing. First, that would not be a workable standard. Second, it would violate the well-established rule that "what matters [on judicial review of administrative rulings] are the reasons articulated *by the ALJ*," not the rationale advanced by the government on appeal. *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (citing *SEC v. Chenery Corporation*, 318 U.S. 80, 87-88 (1943) (emphasis in original)). Factors the ALJ might have or could have considered while working on this case, but that he did not articulate in his written opinion, are not relevant to the Court's analysis.

room to treat chronic pain when she was being seen regularly by her primary care physician and a spine surgeon. She had prescriptions for hydrocodone, Mobic, gabapentin, naproxen, acetaminophen, a ketamine infused ointment, at times oxycodone, and various other medications. [*See*, *e.g.*, dkt. 8-7 at 143, 266, 324.] The ALJ does not speculate about what additional remedies Jaclyn might have obtained by frequently waiting in an emergency room for additional care. The ALJ also notes that Jaclyn does not demonstrate "signs typically associated with chronic severe pain, such as muscle atrophy, spasm, rigidity, or tremor." [*Id.*] The basis for the ALJ's opinion on this point is unclear, but it is not supported by the record and is beyond his expertise as a non-medical professional. *See Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (In reviewing the medical record and determining the RFC, the ALJ "must not succumb to the temptation to play doctor" or reach conclusions outside her lay expertise.).

In sum, the ALJ made several legal errors in conducting Jaclyn's subjective symptom analysis. His opinion does not identify anything in the medical record that contradicts her claims about the intensity, persistence, and limiting effects of her medical conditions. Accordingly, the undersigned recommends that the District Judge **REVERSE and REMAND** the Commissioner's decision.

### IV. CONCLUSION

For the reasons explained above, the Magistrate Judge recommends that the District Judge **REVERSE and REMAND** the Commissioner's decision finding that Jaclyn was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections **within 14 days** after of this Order will constitute a waiver of subsequent review absent a showing of good cause for that failure.

**Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.**

 So RECOMMENDED.

Date: 12/16/2024

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution

All ECF-registered counsel of record via email